575 F.Supp. 1232 (1983)
Garret F. MEYER, Jr., Plaintiff,
v.
PHILLIP MORRIS, INC., and The Seven-Up Company, Defendants.
No. 83-1107C(1).
United States District Court, E.D. Missouri, E.D.
December 28, 1983.
*1233 Kent D. Kehr, Clayton, Mo., for plaintiff.
Thomas C. Walsh, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on defendants' motion to dismiss Count II of plaintiff's First Amended Complaint. Defendants' motion requires this Court to decide a question of first impression: whether punitive damages are recoverable for willful, wanton and malicious violations of §§ 104(b)(1) and (3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1024(b)(1), (3). This Court is unaware of any judicial decision, published or unpublished, which has directly addressed this question.[1]

I. BACKGROUND:
Plaintiff was an employee of defendants during the years 1955 through 1975. During that time plaintiff was a participant in a pension plan governed by the provisions of ERISA. Defendants were, at the various times relevant herein, the administrators of said pension plan. Plaintiff's original complaint sought statutory and punitive damages for defendants' alleged violations of various provisions of ERISA. In Count I, plaintiff alleged that on several occasions he requested defendants to furnish him with a statement of his accrued benefits and rights under the pension plan, but that defendants failed to furnish such information in violation of 29 U.S.C. § 1024(b)(4). Count I sought statutory damages of $100.00/day for every day, in excess of thirty days, that defendants failed or refused to provide the requested information, as well as an order directing defendants to provide the requested information. The statutory damages were sought pursuant to 29 U.S.C. § 1132(c). Count II of the original complaint alleged that defendants violated 29 U.S.C. §§ 1024(b)(3) and (4) in failing to provide plaintiff with a summary of the pension plan's annual report, a summary description of the plan, and a statement of plaintiff's rights under the plan. Plaintiff sought $50,000.00 in punitive damages only, for the violations alleged in Count II. In an order dated September 6, 1983, this Court denied defendants' motion to dismiss Count I but granted the motion to dismiss Count II. Meyer v. Phillip Morris, Inc., 569 F.Supp. 1510 (E.D.Mo.1983). Count II was dismissed because this Court held that "punitive damages in excess of the statutory penalty limit are not available in ERISA actions based upon an administrator's refusal to supply information required by statute to be supplied." Id. at 1512.
In his First Amended Complaint, plaintiff retains his claims under Count I.[2] However, the First Amended Complaint also includes a Count II which seeks $50,000.00 *1234 in punitive damages only for defendants' alleged willful, wanton and malicious violations of 29 U.S.C. §§ 1024(b)(1) and (3). Because Count II of his First Amended Complaint is identical to Count II of plaintiff's original Complaint, with the exception of the substitution of the allegation that defendants violated § 1024(b)(1) for the allegation that defendants violated § 1024(b)(4), defendants contend that dismissal of Count II of the First Amended Complaint is mandated by this Court's prior ruling. While this Court agrees that Count II of the First Amended Complaint must be dismissed, the argument that plaintiff now makes in support of Count II is new and was not answered by this Court's earlier order.

II. STATUTORY SCHEME:
The substantive provisions of ERISA which plaintiff relies on in Count II of his First Amended Complaint are found in § 1024 of Title 29, United States Code. Section 1024(b)(1) provides that the plan administrator "shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary, plan description, and all modifications and changes [thereto]" by the later of "(A) ... 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or ... (B) ... 120 days after the plan becomes subject to [ERISA]." 29 U.S.C. § 1024(b)(1). Section 1024(b)(1) further provides that the administrator must furnish a summary description of certain modifications or changes in the plan "not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." Id. Section 1024(b)(3) contains a similar provision with respect to annual reports: "[w]ithin 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year ...." 29 U.S.C. § 1024(b)(3). Section 1024(b)(2) directs the administrator to make "copies" of the plan description, the annual report and other pertinent documents "available for examination" in the administrator's office and other places. 29 U.S.C. § 1024(b)(2). Finally, § 1024(b)(4) provides that the "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report ...", and other pertinent documents. 29 U.S.C. § 1024(b)(4).
The authority to enforce the substantive rights provided in, inter alia, section 1024(b), is found in § 1132. Section 1132(a)(3) provides:
A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provisions of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...
29 U.S.C. § 1132(a)(3) (emphasis added). In addition, § 1132(c), entitled "Administrator's refusal to supply requested information", provides:
Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
29 U.S.C. § 1132(c).

III. DISCUSSION:
Count II of plaintiff's original complaint sought punitive damages for defendants' alleged violations of sections 1024(b)(3) and (4). This Court dismissed Count II on the grounds that: 1) the statutory damages of *1235 § 1132(c) were available and thus punitive damages were not necessary to deter the conduct which plaintiff complained of; and 2) the language "up to" in § 1132(c) suggested a Congressional intent to place a "ceiling on an administrator's monetary liability for breaches of his duty to supply information." Meyer, 569 F.Supp. at 1512. Plaintiff now argues that, because his claim for punitive damages in Count II of his First Amended Complaint is based upon alleged violations of §§ 1024(b)(1) and (3), rather than §§ 1024(b)(3) and (4), this Court's prior decision does not mandate dismissal of his present Count II and that this claim for punitive damages is authorized by the statute.
Plaintiff argues that his present Count II is distinguishable from his prior Count II because the administrator's duty to furnish information under §§ 1024(b)(1) and (3) is "automatic", as opposed to the administrator's duty under § 1024(b)(4) which is expressly conditioned on a written request. Plaintiff carries this argument one step further by contending that, because the statutory damages of § 1132(c) are also conditioned on a request, statutory damages are not recoverable for a violation of §§ 1024(b)(1) or (3). Therefore, plaintiff argues, this Court's prior order is inapplicable to the present Count II and this Court should construe the phrase "other appropriate equitable relief" in § 1132(a)(3)(B) to include punitive damages for violations of §§ 1024(b)(1) and (3).
Although this Court agrees that the issue raised by plaintiff now is distinct from that decided by this Court's prior order, this Court does not agree that a different result is appropriate. Plaintiff is correct that §§ 1024(b)(1) and (3) are "automatic" duties of the administrator and that statutory damages under § 1132(c) would not be available in the absence of a written request. However, the statutory damages of § 1132(c) would be available if an administrator refused or failed to provide the information that is the subject of §§ 1024(b)(1) and (3) following a request therefor. To that extent, this Court's prior order would preclude the availability of punitive damages for violations of section 1024(b)(1) and (3) where a request, even though not required, is involved. Accordingly, the sole issue presented on this motion is whether punitive damages are available by a participant for an administrator's violation of the "automatic" requirements of §§ 1024(b)(1) and (3).
In deciding this issue, this Court must emphasize that the question is not whether the language, "other appropriate equitable relief", in § 1132(a)(3)(B) can be interpreted to include punitive damages, but whether Congress intended that language to authorize such relief. On this question, this Court is persuaded by the dicta of the Eighth Circuit in Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir.), cert. denied 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981):
[w]e do not think punitive damages are provided for in ERISA. Ordinarily punitive damages are not presumed; they are not the norm; and nowhere in ERISA are they mentioned. If Congress had desired to provide for punitive damages, it could have easily so stated, as it has in other acts.
Id. at 1216. Other courts have expressly held that punitive damages are not available for ERISA violations. See Hechenberger v. Western Electric Co., 570 F.Supp. 820, 822 (E.D.Mo.1983); Whitaker v. Texaco, Inc., 566 F.Supp. 745, 751 (N.D.Ga.1983) ("`Equitable or remedial relief' and `equitable relief' do not encompass punitive damages as punitive damages are not `equitable'."); Maxfield v. Central States, Southeast and Southwest Areas Health, Welfare and Pension Funds, 559 F.Supp. 158, 160 (N.D.Ill.1982); Calhoun v. Falstaff Brewing Corp., 478 F.Supp. 357, 359 (E.D. Mo.1979) (Nangle, J.); Hurn v. Retirement Fund Trust of Plumbing, etc., 424 F.Supp. 80 (C.D.Cal.1976). Those decisions which have held to the contrary are distinguishable in that they involved some type of retaliation in breach of the administrator's fiduciary duty, rather than violations of the technical requirements of §§ 1024(b)(1) and (3). See Jiminez v. Pioneer Diecasters, *1236 549 F.Supp. 677 (C.D.Cal.1982); Bittner v. Sadoff & Rudoy Industries, 490 F.Supp. 534 (E.D.Wis.1980); Baeten v. Van Ess, 474 F.Supp. 1324 (E.D.Wis.1979). To the extent that they are not distinguishable, this Court rejects them.
The court in Dependahl noted that punitive damages are appropriate where such relief is necessary to deter the specific conduct complained of. Dependahl, 653 F.2d at 1217. It is the opinion of this Court that the unavailability of statutory damages for violations of the "automatic" duty imposed by §§ 1024(b)(1) and (3) does not lead to the conclusion that punitive damages are necessary to deter such violations. Section 1131 provides for criminal penalties, up to a $5,000.00 fine and one (1) year in prison, against "[a]ny person who willfully violates any provision of part 1 of this subtitle ...." 29 U.S.C. § 1131. Section 1131 is part of Subtitle B, and §§ 1024 is contained in Part 1 of Subtitle B. Accordingly, the penalties of § 1131 apply to the violations which plaintiff complains of. It is the opinion of this Court that criminal penalties are a sufficient deterrence to violations of §§ 1024(b)(1) and (3), such that punitive damages are not necessary to protect the rights of plan participants and beneficiaries created thereby.
In addition, the evidence that Congress intended punitive damages to be available for ERISA violations is ambiguous at best. Congress was capable of expressly providing for such relief but did not do so. The statutory damages provisions of § 1132(c) are specific and the exclusion from coverage of the "automatic" duties contained in §§ 1024(b)(1) and (3) implies an intent not to impose any financial liability (i.e., legal remedies) on administrators for violations of those duties. It was not unreasonable for Congress to conclude that the rights created by §§ 1024(b)(1) and (3), while substantial enough to warrant protection by equitable relief and the threat of criminal sanctions, were not worthy of the risk of financial liability.
Moreover, Congress was well aware of the legal, technical meaning of the term "equitable", as opposed to "legal", when used in connection with remedies. Indeed, a common sense reading of the term "other" in the phrase "other appropriate equitable relief", suggests that "other" refers to "enjoin" in § 1132(a)(3)(A) and should therefore be limited to traditional equitable remedies. Also, the two subdivisions following "other appropriate equitable relief" state the purpose of such relief is "to redress," 29 U.S.C. § 1132(a)(3)(B)(i), and "to enforce," 29 U.S.C. § 1132(a)(3)(B)(ii). There is no indication in the language of the statute that punishment is a purpose of § 1132(a)(3)(B).
This Court is cognizant of the passage in the legislative history of ERISA, which states that Congress intended to provide "the full range of legal and equitable remedies available in both state and federal courts." H.R.Rep. No. 533, 93d Cong., 1st Sess. 17, reprinted in [1974] U.S.Code Cong. & Ad.News 4639, 4665; Sen.Rep. No. 127, 93d Cong., 1st Sess. 35, reprinted in [1974] U.S. Code Cong. & Ad.News 4838, 4871. However, this passage is not a sufficient basis for this Court to read into the statute that which Congress declined to include. In fact, the passage is further support for drawing a distinction between "legal" and "equitable" relief because the passage itself makes such a distinction.

IV. CONCLUSION:
This Court concludes that punitive damages are not available for violations of the "automatic" duty provisions of sections 1024(b)(1) and (3). While the availability of such relief may be preferable as a matter of public policy, it is not the role of this Court to make such policy judgments. Judicial restraint is especially warranted here where the right involved was created by Congress as part of a very complex statutory framework. Judicial restraint also fosters careful draftmanship. A carefully drafted statute should not be loosely interpreted.
NOTES
[1] Defendants contend that a prior order of this Court answered this question and is dispositive of the pending motion. However, as discussed infra, this Court's prior order dealt with the question of the availability of punitive damages for violations of 29 U.S.C. § 1024(b)(3) and (4). Moreover, the argument which plaintiff now makes in support of his contention that punitive damages are available for violations of 29 U.S.C. §§ 1024(b)(1) and (3) is new and was not expressly answered by this Court's prior order.
[2] Count I of the First Amended Complaint differs from that in the original Complaint only in the fact that the most recent Count I alleges a written request for the information in question.