William L. WHITAKER, Jr., et al., Plaintiffs,

v.

TEXACO, INC., et al., Defendants.

Civ. A. No. C83–0174A.

United States District Court, N.D. Georgia, Atlanta Division.

June 27, 1983.

John A. Chandler, Sutherland, Asbill & Brennan, Atlanta, Ga., for plaintiffs.

Frank C. Jones, King & Spalding, Atlanta, Ga., J.M. Mitchell and James D. Garrison

and Susannah B. Wilshire, Houston, Tex., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs brought this suit against defendants for breach of a group pension plan provided by defendants, (Counts One and Three), for breach of fiduciary duties owed to plaintiffs (Counts Two and Four) and for making false and misleading representations to plaintiffs concerning the pension plan (Count Five). Presently pending before this court is defendants' motion to dismiss Counts Three, Four and Five and plaintiffs' claim for punitive damages.[1]

*FACTS*

Defendant Group Pension Plan of Texaco, Inc. ("the Plan") is a pension plan established by defendant Texaco, Inc. to provide retirement benefits for employees of Texaco, Inc., and certain of its subsidiaries and affiliated companies. As an alternative to the "Normal Retirement Income" (monthly pension) provided by the Plan, members may opt to receive a single cash amount upon retirement, or "lump sum cash settlement," which is the "Actuarial Equivalent of the Normal Retirement Income Payments."[2]

The current dispute arose over the discount rate used by defendants to determine the lump sum cash settlement amount. From 1962 through February, 1976, the discount rate was 4%. Effective March 1, 1976, the rate was increased to 5.5% and was increased periodically thereafter, reaching a high of 11% on July 1, 1982. Each of these increases was unilaterally performed by defendants. At the time plaintiffs retired and elected the lump sum cash option, the discount rate used to determine their settlement amounts ranged from 8 to 10.5%.

The effect of using a discount rate greater than 4% was to lower the dollar amounts received by those who elected the lump sum cash option below what they would have received had the rate remained at 4%. The essence of plaintiffs' allegations is that the increases in the discount rate and the manner in which the defendants employed the discount rate were arbitrary and capricious and "constituted modifications or amendments of the Plan which reduced the amount of retirement income and/or accrued benefits to plaintiffs" in violation of a Plan provision relating to modification, suspension or amendment of the Plan.[3] (Counts One and Three). Plaintiffs also allege that by making these changes in the discount rate, defendants breached their respective fiduciary duties to plaintiffs. (Counts Two and Four) In addition, plaintiffs claim that defendants made misrepresentations to plaintiffs as to the discount rate to be used in computing the lump sum cash settlement and as to the manner in which the discount rate was to be employed. (Count Five)

The motion before the court concerns the vitality of three of plaintiffs' Counts and plaintiffs' claim for punitive damages. Defendants submit that the causes of action alleged in Counts Three, Four and Five are claims under state law which are preempted

---

1. Defendants also moved to dismiss plaintiffs' jury demand. This issue was mooted when plaintiffs withdrew their jury demand. Plaintiffs' Response to Defendants' Motion to Dismiss, p. 1.

2. Plan Article VII, ¶ 2(c)(iv):
   Under Alternate Option (iv) (Cash Option) the Normal Retirement Income will be changed to a single sum amount which is the Actuarial Equivalent of the Normal Retirement Income Payments and this amount will be paid to the Members as a lump sum cash settlement on the designated Retirement Date....

3. Plan Article XIV, ¶ 1:
   The Company, in its sole and absolute discretion, reserves the right, at any time and from time to time, to suspend or discontinue its contributions or to modify, suspend, amend or terminate this Plan in whole or in part ... provided, however, that the Company shall have no power to perform any of such actions in a manner which will ... reduce the amount of retirement income or other benefits theretofore accrued to any Member....

by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1974), or are fatally redundant. Additionally they challenge the misrepresentation claim (Count Five) on the ground that it is not sufficiently particularized as required by Rule 9(b) of the Fed.R.Civ.P. or, alternatively, that it is barred by the statute of limitations. Defendants also seek a dismissal of plaintiffs' claim for punitive damages, arguing that punitive damages are inappropriate relief under ERISA.

DISCUSSION

A. *Preemption*

Plaintiffs' complaint contains the following Five Counts:

*Count One:* Defendants breached the terms of the Plan and thereby violated ERISA;

*Count Two:* Defendants breached their fiduciary duties to plaintiffs and thereby violated ERISA;

*Count Three:* Defendants breached the terms of the plan as an "enforceable agreement" between defendants and plaintiffs;

*Count Four:* Defendants breached state and common law fiduciary duties owed to plaintiffs;

*Count Five:* Defendants made intentionally false and misleading representations to plaintiffs.

Thus, two counts expressly allege ERISA violations, while Counts Three through Five do not. Defendants argue that the last three Counts present state law claims which are preempted by ERISA, 29 U.S.C. § 1144, and should be dismissed. Plaintiffs answer that these Counts state claims under the federal common law which supplements the express provisions of ERISA and invoke state law only by incorporation into the federal common law.

Congress mandated that ERISA, with four exceptions, "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of [ERISA] and not exempt under section 1003(b) of [ERISA]." 29 U.S.C. § 1144(a). "State Law" is broadly defined to include "all laws, decisions, rules, regulations or other state action having the effect of law." 29 U.S.C. § 1144(c)(1).

The four exceptions to the preemption provision are for (1) state law with respect to causes of action which arose, or acts or omissions which occurred, before January 1, 1975; (2) state regulation of insurance, banking or securities; (3) use of services or facilities of state agencies and departments as permitted under section 1136; and (4) generally applicable state criminal law. 29 U.S.C. § 1144(b)(1)–(b)(4).

There is no dispute that the Plan is covered by ERISA under 29 U.S.C. § 1003(a) and is not exempt under 29 U.S.C. § 1003(b). The question before the court, then, is whether Counts Three through Five allege state law claims which do not fit within an exception to 29 U.S.C. § 1144 so as to be preempted by ERISA.

Although Counts Three and Four (for breach of contract and breach of fiduciary duties, respectively) present traditional state law causes of action, and as such are preempted by ERISA, they also state causes of action under ERISA if they are read liberally as this court must do for the purposes of the motion to dismiss: Count Three can be considered an action to recover benefits owed or to enforce employee rights under 29 U.S.C. § 1132(a)(1)(B); Count Four can be considered an action for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1)(B)[4]. Because plaintiffs have pleaded, albeit implicitly, ERISA causes of action in Counts Three and Four, the motion to dismiss these Counts for preemption is DENIED.

---

4. Defendants argue that Counts Three and Four improperly allege claims with an independent basis in state law. Admittedly, this court has interpreted ERISA to cover state law causes of action, but this was done for the "interstitial completion of the regulatory scheme" which defendants concede is permitted in the development of federal common law under ERISA. See *Van Orman v. American Insurance Co.,* 680 F.2d 301, 311–312 (3rd Cir.1982).

■ Count Five alleges misrepresentation by defendants concerning the discount rate to be used. With respect to the misrepresentation allegedly occurring *before* January 1, 1975, plaintiffs have asserted a cause of action which can be based on state law without being preempted by ERISA. 29 U.S.C. § 1144(b)(1). With respect to the misrepresentation allegedly occurring *after* January 1, 1975, plaintiffs have asserted an ERISA claim under 29 U.S.C. 1104(a)(1)(B), the fiduciary duty provision. *See Fulk v. Bagley,* 88 F.R.D. 153, 166 (M.D.N.C.1980). Accordingly, the motion to dismiss Count Five for preemption is DENIED.

## B. *Redundancy*

Defendants argue that if Counts Three, Four and Five state causes of action under ERISA, they should be dismissed as redundant and immaterial in view of Counts One and Two. This argument is not supported with citation to any authority, but it is apparently based on Fed.R.Civ.P. Rule 8(e) which requires pleadings to be concise and direct. The court agrees that the complaint is unnecessarily repetitious; however, it will allow Counts Three, Four and Five to remain.

## C. *Statute of Limitation*

■ Defendants submit that the state law misrepresentation claim (Count Five) is barred by the statute of limitations. In Georgia, the time limitation for bringing a suit for injury to personalty based on misrepresentation is four years from when plaintiff could have first maintained his action. O.C.G.A. § 9–3–31 (1982); *Worrill v. Pitney Bowes, Inc.,* 128 Ga.App. 741, 197 S.E.2d 848 (1973).

■ In this case, the earliest any of the plaintiffs could have brought the suit was sometime in 1979 when Plaintiff Davis, the first of the plaintiffs to retire, received his lump sum settlement. It was only then that he learned that the defendants used a higher discount rate than 4% to determine

his settlement. This plaintiff retired January 1, 1979, and it is most likely that he did not receive his settlement amount until at least a month later. Thus, plaintiff Davis had until *at least* January 31, 1983, to bring his action; since he filed his complaint on that date, he met the deadline. All other plaintiffs retired on or after February 1, 1981, and thus received their lump sum settlements sometime after February 1, 1981, which created a 1985, or later, deadline. Obviously their claims are not time barred. In sum, the statute of limitations does not bar the state law misrepresentation claim.

## D. *Particularity Requirement*

■ Defendants argue, alternatively, that the misrepresentation claim (Count Five) is not pleaded with sufficient "particularity" for purposes of Fed.R.Civ.P. Rule 9(b).[5] Judge Moye, in *National Egg Co. v. Bank Leumi Le-Israel B.M.,* 504 F.Supp. 305 (N.D.Ga.1980), has said that:

> The competing policies underlying Rules 9(b) and 8(a) are best resolved by requiring averments of fraud to state such matters as the time, place and content of the alleged misrepresentations as well as who made the alleged misrepresentations to whom.

*Id.* at 308.

Although plaintiffs have not alleged *specific* details of the misrepresentations, they have identified sufficient facts to meet the pleading requirement. The complaint contains allegations indicating the time of the misrepresentations (between 1962 and 1976), the place (where each plaintiff was employed), the nature of the misrepresentation (the use of the 4% discount rate) and the persons involved (the officers of Texaco, Inc. responsible for administering the Plan). Because the pleadings sufficiently identify the circumstances constituting the misrepresentation such that the defendants are able to frame adequate responses, *see*

---

**5.** Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

*Brown v. Joiner International, Inc.,* 523 F.Supp. 333 (S.D.Ga.1981), the motion to dismiss Count Five for lacking particularity is DENIED.

### E. *Punitive Damages*

Finally, defendants seek a dismissal of plaintiffs' claim for punitive damages on the ground that punitive damages are not recoverable under ERISA as a matter of law.

■ Defendants' motion does not seek a dismissal of plaintiffs' claim for punitive damages under the state law misrepresentation claim (Part of Count Five), but just to insure clarity, this court notes that punitive damages are recoverable on this claim. *Hayes v. Irwin,* 541 F.Supp. 397, 439 (N.D. Ga.1982). Of course, plaintiffs must establish that any misrepresentation was willful and wanton. *Id.*

With respect to the ERISA claims, there is much disagreement among the lower courts over whether punitive damages are available under ERISA.[6] The Eighth Circuit Court of Appeals has said that it does not think punitive damages are provided for in ERISA, pointing out that "[o]rdinarily punitive damages are not presumed, they are not the norm, and nowhere in ERISA are they mentioned. If Congress had desired to provide for punitive damages, it could have easily so stated, as it has in other acts." *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216 (8th Cir.1981). However, this was dicta and is not dispositive of the issue. No other appellate court has expressly decided the question.

■ The Northern District of Georgia, however, *has* addressed the issue, at least in part. In *Pfister v. Delta Airlines,* No. C78–1567A, (N.D.Ga. Dec. 21, 1978), *appeal dismissed,* No. 79–3207 (5th Cir. Nov. 5, 1979), Judge Edenfield concluded that punitive damages are *not* provided for in ERISA sections 1132(a)(1) and 1132(a)(3). *Id.,* slip op. at 8–12. Following the reasoning of *Pfister,* this court concludes that plaintiffs' claim for punitive damages for the ERISA violations must be dismissed.

Section 1132 provides in part:

(a) A civil action may be brought

(1) by a participant or beneficiary

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief....

29 U.S.C. § 1132. Thus, the relief available to plaintiffs if their ERISA claims are successful is (1) recovery of benefits due; (2) "appropriate relief under section 1109"; and (3) an injunction or "other appropriate equitable relief."

---

**6.** Of the fifteen lower court cases deciding the issue of punitive damages under ERISA, nine have held such damages unavailable and six have held them available.

*Compare Diano v. Central States Health & Welfare Fund,* 551 F.Supp. 861, 3 E.B.C. 2395, 2397–98 (N.D.Ohio 1982); *Hoskins v. Standard Oil Co.,* No. 79–C–3670 (N.D.Ill. Jan. 17, 1982); *Ziskind v. Retail Clerks Int'l Assoc.,* 3 E.B.C. 1012 (E.D.Cal.1982); *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357 (E.D.Mo.1979); *Baeten v. Van Ess,* 474 F.Supp. 1324 (E.D.Wis. 1979); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* No. TH77–149–C (S.D.Ind. Sept. 27, 1979), *aff'd,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112,

101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Pfister v. Delta Airlines, Inc.,* No. C78–1567A (N.D.Ga. Dec. 21, 1978); *Hurn v. Retirement Fund Trust,* 424 F.Supp. 80 (C.D.Cal.1976); *and Bell v. Southern Oregon Log Scaling & Grading Bureau,* No. 76–431 (D.Or. Aug. 5, 1976) *with Free v. Gilbert Hodgman, Inc.,* 3 E.B.C. 1010 (N.D.Ill. 1982); *Jiminez v. Pioneer Diecasters,* 549 F.Supp. 677 (C.D.Cal.1982); *Bobo v. 1950 Pension Plan,* 548 F.Supp. 623 (W.D.N.Y.1982); *Eaton v. D'Amato,* 3 E.B.C. 1003 (D.D.C.1980); *Bittner v. Sadoff & Rudoy Industries,* 490 F.Supp. 534 (E.D.Wis.1980) *and Short v. Junior Steel Co. Employees Pension Plan and Trust,* 317 Pens.Rep. (BNA) A–13 (C.D.Cal.1980).

The second category of relief, by incorporation of section 1109, is limited to breach of fiduciary duties. Section 1109 provides that a person who breaches his fiduciary duties:

Shall be personally liable to make good ... any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). It follows, then, that the "appropriate relief under section 1109" referred to in section 1132, and to which plaintiffs would be entitled if they won the breach of fiduciary duty claim, is such "equitable or remedial relief as the court may deem appropriate."[7]

The *Pfister* court interpreted "benefits" under section 1132(a)(1) and "other appropriate equitable relief" under section 1132(a)(3), the remedies available to plaintiff for breach of contract, to exclude punitive damages. *Pfister, supra,* slip op. at 8–12. Thus, based on the *Pfister* precedent, this court finds punitive damages unavailable for the alleged breach of contract (Counts One and Three). Furthermore, the language of section 1109 ("equitable or remedial relief as the count may deem appropriate") is sufficiently parallel to the language of section 1132(a)(3) ("appropriate equitable relief") to prompt the conclusion that punitive damages are not available for breach of fiduciary duty either.

■ "Equitable or remedial relief" and "equitable relief" do not encompass punitive damages as punitive damages are not "equitable." *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1364 (11th Cir.1982). Furthermore, the legislative history of ERISA indicates that Congress did not want to burden employers with additional costs and requirements in order to insure the future of the voluntary pension and benefit plans.[8] Congress also indicated its preference for criminal sanctions, rather than punitive damages, as a deterrent to willful violations of ERISA by adopting 29 U.S.C. § 1131.[9]

---

7. Plaintiffs argue that they are entitled to "appropriate relief" which is broader than appropriate "equitable or remedial relief." However, Section 1132(a)(2) (appropriate relief *under Section 1109."* Emphasis added) incorporates the language of section 1109.

8. The House Committee on Education and Labor stated:

The Employee Benefit Security Act as reported by the Committee is designed to remedy certain defects in the private retirement system which limit the effectiveness of the system in providing retirement income security. The primary purpose of the bill is the protection of individual pension rights, but the Committee has been constrained to recognize the voluntary nature of private retirement plans. The relative improvements required by this Act have been weighed against the additional burdens to be placed on the system. While modest cost increases are to be anticipated when the Act becomes effective, the adverse impact of these increases have been minimized. Additionally, all of the provisions in the Act have been analysed on the basis of their projected costs in relation to the anticipated benefit to the employee participant.

H.R.Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, 4639.

Senator Nelson expanded upon this notion during the floor debate on the Conference Report:

In all its deliberations and decisions, Congress was acutely aware that under our voluntary pension system the cost of financing pension plans is an important factor in determining whether a pension plan will be adopted. Unduly large increases in cost can impede the progress of the private pension system. For this reason, in the case of those requirements which add to the cost of financing pension plans, Congress tried to adopt provisions which strike a balance between providing a meaningful protection for the employees and keeping costs within reasonable limits for employers.

Legislative History of the Employees Retirement Income Security Act of 1974, 4800 (3 volumes, Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, April, 1976).

9. 29 U.S.C. § 1131:

Any person who willfully violates any provision of part 1 of this subtitle, or any regulation or order issued under any such provision, shall upon conviction be fined not more than $5,000 or imprisoned not more than one year, or both; except that in the case of such violation by a person not an individual, the fine imposed upon such person shall be a fine not exceeding $100,000.

Finally, a holding that punitive damages are not available under ERISA is consistent with judicial interpretation of analogous statutes such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq., Walker v. Ford Motor Co., supra,* the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, *Dean v. American Security Insurance Co.,* 559 F.2d 1036 (5th Cir.1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), the Equal Pay Act, 29 U.S.C. § 206(d), *Kumbalck v. I. Bahcall Industries, Inc.,* 6 FEP Cas. 1269 (E.D.Wis.1974), and the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq., International Union, USS & AIW v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).

For these reasons, the motion to dismiss plaintiffs' claim for punitive damages as it relates to the ERISA claims is GRANTED.

CONCLUSION

In summary, the court:

1) DENIES the motion to dismiss Counts Three, Four and Five for preemption or redundancy;

2) DENIES the motion to dismiss Count Five for lacking particularity or for being barred by the statute of limitations;

3) DENIES the motion to dismiss plaintiffs' claim for punitive damages in relation to the state law claim for misrepresentation occurring prior to January 1, 1975. (Part of Count Five);

4) GRANTS the motion to dismiss the claim for punitive damages in relation to all ERISA claims.