This appeal by Myra Hood is from a summary judgment entered in behalf of the Prudential Insurance Company of America and an entity created under an Act of Congress known as the Employee Retirement Income Security Act ("ERISA") called the "Plan." We reverse.
 The Case
Myra Hood was an employee of Courtaulds North America Inc. from 1964 until the day she was discharged, 30 November 1979. Subsequent to her discharge, Hood initiated suit against her former employer for workman's compensation benefits. Thereafter, she amended her complaint to include the appellees, the Prudential Insurance Company of America and an entity of the Employee Retirement Income Security Act ("ERISA") called the "Plan," a suable entity under federal law. Hood also amended to add Provident Life and Accident Insurance Company.
Courtaulds moved for, and the trial court granted, dismissal of Courtaulds on the grounds there was no genuine issue as to any material fact regarding the claims against it. Provident was dismissed on a settlement stipulation among the interested parties. These dismissals left Prudential *Page 1229 
and the Plan as the only defendants. They are the appellees here.
Hood's complaint sounds both in contract and in tort. Hood's contract claim against Prudential is based on a group long term disability policy issued by Prudential to Courtaulds for the benefit of its employees. Hood asserted a similar cause of action against the Plan, pursuant to ERISA, which includes and governs any disability benefit program maintained by an employer in interstate commerce for the benefit of its employees and funded by a group insurance policy.
The trial court struck Hood's claims for punitive damages against Prudential and against the Plan. Appellant's motion to reconsider the order striking punitive damages against Prudential, filed after the decision in Chavers v. NationalSecurity Fire and Casualty Co., 405 So.2d 1 (Ala. 1981), was denied. Similarly, the trial court struck Mrs. Hood's claim for punitive damages against the Plan.
In January of 1983, the trial court entered summary judgment in favor of both the Plan and Prudential on the remaining contract claims. In March of 1983, the court denied Hood's motions challenging the entry of summary judgments.
 The Facts
Myra Hood was first employed by Courtaulds North America Inc. in 1964. Hood was discharged from Courtaulds in November of 1979. The personnel records of Courtaulds show that she was discharged because of a longstanding problem with job performance and continued unexplained absences due to various progressive physical and mental disabilities dating from 1970, and that she was physically completely unable to do her job. Hood's complaints included an undersized kidney, sphincter laxity, distended bladder, chronic diarrhea, chronic pyelonephritis, spinal defects, arthritis, bilateral sacroiliac strain, musculoligamentous back strain syndrome, together with a highly nervous condition.
In 1968, while Hood was still an employee, Courtaulds established the employee welfare benefit plan to which we previously alluded, and of which Courtaulds is the administrator. ERISA requires that a summary description of the plan be given to plan participants. That document as provided to Courtauld's employees provides, in part, as follows:
 "ERISA imposes duties upon the people who are responsible for the operation of the plan. The people who operate your plan, called `fiduciaries' of the plan, have a duty to do so prudently and in the interest of you and the other plan participants and beneficiaries."
Under a section entitled "Rights and Protections," the summary of the plan provides:
 "If you have a claim for benefits which is denied or ignored in whole or in part, you may file suit in a state or federal court."
Hood proceeds against the Plan under the terms of ERISA.
 The Issues
Hood appeals from the summary judgments and orders striking her claim for punitive damages.
Hood states the issues on appeal to be:
 "1. The Plaintiff's discharge from employment did not invalidate her claim thereafter submitted for benefits for physical disability developing before her discharge. Therefore her claim is valid and the summary judgment is erroneous.
 "2. The Plaintiff timely submitted her claim for benefits in accordance with the policy and the Plan. Therefore the summary judgment is erroneous.
 "3. The Plaintiff did not fail to exhaust any administrative remedy. Therefore the summary judgment is erroneous.
 "4. The Plaintiff's actions against Prudential and the Plan for bad faith failure or refusal to honor her claim for benefits are validly stated, are not barred by the statute of limitations, and are supported by at least a scintilla of evidence. Therefore the summary judgment and the orders striking the claims for punitive damages are erroneous. *Page 1230 
 "5. ERISA does not preempt Alabama jurisprudence recognizing the tort of bad faith as it applies to Prudential. Therefore the summary judgment in favor of Prudential and the orders striking the claims for punitive damages against Prudential are erroneous."
These propositions, stated as issues, are Hood's replications to the defenses offered by appellees upon which they prevailed. The issues for review determinative of the outcome of this appeal are:
(A) Whether ERISA preempts or supersedes Alabama law, which recognizes the tort of bad faith refusal to pay a valid insurance claim, as it applies to Prudential.
(B) Whether ERISA permits the recovery of punitive damages against the Plan for its bad faith failure or refusal to honor Hood's claim.
(C) Whether the trial court erred by entry of summary judgment.
We now turn to the resolution of the above.
 I
Both parties agree that the preemptive provisions of ERISA bar a state claim for bad faith refusal to pay against the Plan. Their conclusions are properly based on the language within 29 U.S.C. § 1144 (a), which reads in pertinent part:
 "(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ."
This sweeping provision is modified, however, by the saving clause found in subparagraph § 1144 (b)(2)(A), which reads:
 "(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."
Hood argues that under the above saving clause, Alabama law continues to govern and regulate insurance companies, including Prudential. We agree.
It is evident that through federal legislation Congress sought to protect ERISA styled pension plans from the intrusion of state regulation. See Alessi v. Raybestos-Manhattan,451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Nevertheless, as evidenced by the saving clause, Congress intended for the regulation of the insurance industry to remain within the province of state law. (There is no federal regulation of that industry.)
Prudential relies heavily upon Alessi v. Raybestos-Manhattan,451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), to support its argument that a state claim for bad faith refusal to pay is preempted by federal law. In Alessi, the Supreme Court held that a New Jersey statute concerning workmen's compensation disability benefits "related to" ERISA pension plans and was therefore preempted by federal law insofar as the statute eliminated one method for calculating pension benefits under ERISA pension plans. Id., 451 U.S. at 524, 101 S.Ct. at 1906. The New Jersey statute purported to prohibit offsetting workmen's compensation disability benefits against employees' retirement pension benefits or payments. In application, this statute effectually eliminated one method of calculating pension benefits specifically provided for under ERISA.
In contrast to the situation in Alessi, a bad faith refusal to pay action brought against Prudential, an insurance company, neither directly nor indirectly affects the terms or conditions of employee benefit plans governed by ERISA. See 29 U.S.C. § 1144
(c)(2).
Title 29 U.S.C. § 1144 (b)(2)(B), restricts the application of the saving clause in § 1144 (b)(2)(A) for the purpose of directly or indirectly regulating ERISA pension plans. It reads in part:
 "(B) Neither an employee benefit plan described in section 1003 (a) of this title, . . . nor any trust established under such *Page 1231 
a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."
This provision further prohibits the state regulation of ERISA plans, under the authority of the saving clause, simply because the plan may act as self-insurer on all of its benefits.Wadsworth v. Whaland, 562 F.2d 70 (1st Cir. 1977); see alsoHewlett-Packard Co. v. Barnes, 425 F. Supp. 1294 (N.D.Cal. 1977). However, in the instant case, the plan is not acting as a self-insurer, but rather has obtained a group benefit policy from Prudential. Clearly, Prudential is the insurer and the plan is the insured. Accordingly, 29 U.S.C. § 1144 (b)(2)(B) in nowise prohibits the regulation of Prudential merely because the plan is one of its policyholders. Wayne Chemical, Inc. v.Columbus Agency Service Corporation, 567 F.2d 692 (7th Cir. 1977); Cate v. Blue Cross-Blue Shield of Alabama, 434 F. Supp. 1187
(E.D.Tenn. 1977).
Based upon the foregoing, we must conclude that Hood's bad faith refusal to pay claim against Prudential does not affect the terms and conditions of ERISA pension plans and is authorized by 29 U.S.C. § 1144 (b)(2)(A). We hold that Hood's claim against Prudential does not "relate to" ERISA pension plans as contemplated by 29 U.S.C. § 1144 (a) and therefore is not preempted by federal law.
 II
The second issue on appeal concerns whether ERISA allows the recovery of punitive damages against the Plan based on a theory of bad faith refusal to honor a claim.
As we have indicated above, ERISA preempts all state laws which "relate to" the covered employee benefit plans. In contrast to state claims brought against insurance companies which fund pension plans, such as Prudential, see Wadsworth v.Whaland, 562 F.2d 70, 78 (1st Cir. 1977); Lederman v. PacificMutual Life Ins. Co., 494 F. Supp. 1020, 1022 (C.D.Cal. 1980); a state claim for bad faith refusal to honor a claim brought against the Plan clearly "relates to" the Plan and is thereby preempted by ERISA. 29 U.S.C. § 1144; Whitaker v. Texaco, Inc.,566 F. Supp. 745, 748 (N.D.Ga. 1983); Lederman v. Pacific MutualLife Inc. Co., 494 F. Supp. at 1022.
It follows that any state claim brought against the Plan must arise under 29 U.S.C. § 1132[1] which authorizes participants or beneficiaries of the Plan to bring a civil action to recover benefits, enforce rights, or clarify rights, under the terms of the Plan.
Insofar as Hood's fifth cause of action against the Plan presents a state claim for bad faith refusal to honor a claim, it is preempted. See Ogden v. Michigan Bell Telephone Co.,571 F. Supp. 520, 524 (E.D.Mich. 1983). However, we consider the fifth cause of action to similarly state a federal claim under29 U.S.C. § 1132, when read in a liberal manner, because the claim seeks compensatory damages for sums due under the terms of the Plan. See Whitaker v. Texaco, Inc., 566 F. Supp. at 748.
Whether 29 U.S.C. § 1132 authorizes the recovery of punitive damages is a question which remains unsettled amongst federal appellate courts. Cf. Dependahl v. Falstaff Brewing Corp.,653 F.2d 1208 (8th Cir. 1981); Russell v. Massachusetts Mutual LifeIns. Co., 722 F.2d 482 (9th Cir. 1983). In our view, both the statutory language and the policy considerations of ERISA warrant the conclusion that an action for punitive damages may not be brought against the Plan.
Title 29 U.S.C. § 1132, mentions neither punitive nor exemplary damages although Congress could have done so. *Page 1232 
The section's consistent reference to the terms of the plan suggest that only claims sounding in contract are authorized. Punitive damages are rarely allowed in ex contractu actions, are not the norm, and should not be implied. Dependahl v.Falstaff Brewing Corp., supra, Diano v. Central States,551 F. Supp. 861, 863 (N.D. Ohio 1982).
The policy considerations militating against punitive damages were persuasively set out recently in Whitaker v. Texaco, Inc.,566 F. Supp. 745 (N.D.Ga. 1983). Under circumstances closely analagous to those at bar, Judge Hall, of that court, commented:
 "[T]he legislative history of ERISA indicates that Congress did not want to burden employers with additional costs and requirements in order to insure the future of the voluntary pension and benefit plans. Congress also indicated its preference for criminal sanctions, rather than punitive damages, as a deterrent to willful violations of ERISA by adopting 29 U.S.C. § 1131." (Footnotes omitted.)
Id., 566 F. Supp. at 751.
Additionally, Whitaker correctly points out that courts have declined to allow suits for punitive damages under federal acts similar to ERISA. Id., at 752.
For the foregoing reasons, we hold that 29 U.S.C. § 1132 does not authorize claims for punitive damages against the Plan. Accordingly, the trial court's order striking Hood's claim for punitive damages against the Plan is due to be, and is hereby, affirmed.
 III
The final issue this court must address in this case is whether the facts presented by Hood in opposition to defendant's motions for summary judgment support the remaining claims against Prudential and against the Plan. Our careful review of the record reveals evidence supportive of each of the remaining claims sufficient to weather these motions.
Hood has presented evidence that she was physically disabled prior to her dismissal by Courtaulds and that her dismissal was directly related to her physical disabilities. There is further evidence Hood's disabilities are of the type covered by the group long term disability policy issued by Prudential to Courtaulds for the benefit of Hood and other employees. She has presented affidavits which indicate she submitted her claims for coverage properly and that the defendants were aware there was no debatable reason for a failure or refusal to pay her claim. Lastly, Hood has presented evidence which indicates defendants failed to pay her claim within a reasonable period of time. Because of this, and other evidence, there are genuine issues of material fact remaining. Summary judgment is inappropriate when there is, as here, evidence supporting the party against whom the motion is made. Savage v. Wright,439 So.2d 120 (Ala. 1983).
Therefore, for the above stated reasons, we reverse the judgment of the circuit court as to all issues, except the issue regarding the recovery of punitive damages against the Plan, and this cause is remanded to that court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.
[1] Federal claims against fiduciaries may also arise under29 U.S.C. § 1109.