**Lonie C. ZITTROUER, By Her Next Friend and Attorney-in-Fact, Frances H. DUNN, Plaintiff,**

v.

**UARCO INCORPORATED GROUP BENEFIT PLAN, and Uarco Incorporated, Defendants.**

**Civ. A. No. C83–705A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 30, 1984.

John W. Hinchey, Phillips & Mozley, Atlanta, Ga., for plaintiff.

John K. Train, III, Martin J. Elgison, Alston & Bird, Atlanta, Ga., William A. Montgomery, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq* (1975). Jurisdiction is predicated upon 29 U.S.C. § 1132. The action is presently before the court on Defendant Uarco Group Benefit Plan's motion for summary judgment.[1] For the reasons stated hereinafter, defendant's motion is GRANTED in part, DENIED in part.

## FACT

Defendant Uarco Incorporated Group Benefit Plan (the "Uarco Plan") is an employee welfare benefit plan established and paid for by Uarco Incorporated ("Uarco"). Uarco is the sponsor and administrator of the Uarco Plan.

Plaintiff's deceased spouse was a former employee of Uarco. As the surviving spouse of a former employee plaintiff became entitled to certain welfare benefits under the Uarco Plan. Frances Dunn is the plaintiff's niece. Pursuant to a power

of attorney Ms. Dunn has had control over the plaintiff's affairs since 1976. William Dunn is Ms. Dunn's husband and is currently the Southern Division Claim Manager for the Lumberman Mutual Casualty Company, a part of Kemper Insurance Company.

After Mr. Zittrouer died in February, 1982, Mr. and Ms. Dunn assumed responsibility for helping plaintiff file claims for herself with the Uarco Plan. Mr. Dunn discussed these claims with his co-worker, Mr. Blanch, who was then Division Health Claims Manager for the Kemper Group. Mr. Blanch agreed to assist the Dunns in processing and filing the claims.

On November 4, 1982, plaintiff entered the Northside Convalescent Center ("Northside") in Atlanta. At this time plaintiff was 79 years old. Through her representatives, plaintiff has claimed for benefits in connection with her stay in Northside from November 4, 1982, to January 2, 1983. According to plaintiff, certain of the benefits have been wrongfully denied, in whole or in part, by the Uarco Plan. For this reason plaintiff instituted this action on April 12, 1983, alleging violations of ERISA and also alleging what appear to be certain state law claims.

Defendant Uarco Plan has now moved for summary judgment as to all six counts of plaintiff's complaint. In discussing defendant's motion the court will focus on each count separately. Further facts will be disclosed as necessary for the discussion of this motion.

## DISCUSSION

### I. *Count One*

In Count One of her complaint plaintiff alleges that the Uarco Plan wrongfully denied her claim for benefits for her confinement at Northside. In this count plaintiff seeks the benefits allegedly due her, inter-

---

**1.** The original motion for summary judgment was filed on December 30, 1983, by Uarco Incorporated Group Benefit Plan. On January 6, 1984, Uarco Incorporated, administrator of the plan, was added as a party defendant. Defendant's brief in reply to plaintiff's response to the motion for summary judgment seems to assume

that the motion for summary judgment has been converted into a motion by both defendants. Uarco Incorporated has not filed a motion for summary judgment and the discussion/decision contained in this order is not applicable to Uarco Incorporated.

est on this sum, and reasonable attorneys' fees and costs for this action.

According to defendant, plaintiff is not entitled to any extended care benefits because plaintiff was over age 70 when she first entered Northside. Defendant has introduced a copy of the full text of the Uarco Incorporated Medical Expense Group Benefit Plan (the "Plan Document"). (Included in Exhibit A of defendant's Motion for Summary Judgment). Page 15 of the text of this document contains the provisions relevant to benefits for Extended Care. The pertinent language is as follows:

 1. *Confinement*

 If a covered person is confined in an Extended Care Facility, benefits will be payable subject to the following limitations:

 . . . . .

 (c) Confinement begins prior to the covered person's 70th birthday....

It is undisputed that plaintiff was 79 upon entering Northside.

It appears clear that plaintiff is not entitled to benefits under the express provisions of the Uarco Plan Document. Plaintiff contends, however, that defendant is estopped to deny coverage because the plan description distributed to plaintiff (and other beneficiaries) does not include this exclusion. In essence, plaintiff argues that this is a material misrepresentation, that she was justified in relying on the booklet and that she incurred damages (i.e., expenses) as a result of this reliance.

In order to fully comprehend plaintiff's argument it is necessary to focus on certain of the provisions and policies of ERISA. ERISA, enacted in 1974, is a comprehensive piece of reform legislation designed to protect the rights of participants and beneficiaries in employee benefit plans. 29 U.S.C. § 1001. The stated policy of the Act is to protect these persons by "requiring the disclosure and reporting to participants and beneficiaries ... of information with respect ... [to the Act, and] by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans...." *Id.*

In order to insure that the participants and beneficiaries have full knowledge of all necessary information the Act requires that they be furnished with what is known as a summary plan description ("summary plan").[2] 29 U.S.C. § 1022(a)(1). This summary plan must contain certain information, including "... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). ERISA specifically allows private actions for benefits, injunctions and other appropriate relief, including attorneys' fees. 29 U.S.C. § 1132.

The Uarco Plan did publish a summary plan as required, entitled "Uarco Hospital—Medical Coverage 1979." It is undisputed that plaintiff was provided with a copy of this summary plan. Pages 13 and 14 of the summary plan pertain to the Extended Care Benefits. According to the information provided these benefits will be paid if a participant or beneficiary is transferred to an extended care facility immediately following a hospital confinement of at least three days' duration. The summary plan carefully notes the maximum amount that will be paid and the maximum duration for which it will be paid. In addition, the summary plan lists certain types of institutions which will not constitute an extended care facility. Nowhere in the discussion of these benefits is there any mention of an exclusion for people who are over age 70 when they enter the extended care facility. Page 35 of the summary plan enumerates 13 limitations which apply to all medical benefits. The over-age 70 exclusion does not appear there, either. Defendant does not contend that any portion of the summary plan informs participants and beneficiaries of this exclusion.

■ As previously stated plaintiff contends that because of the omission of this exclusion from the summary plan, defendant is estopped to deny benefits on this

---

**2.** The summary plan is to be distinguished from the Plan Document which contains the entire text of the Plan.

basis. The doctrine of equitable estoppel contains three requirements: (1) an intentional deception through concealment or inaction, or gross negligence amounting to constructive fraud; (2) justifiable reliance; and (3) damages.[3] *In re Henderson,* 577 F.2d 997 (5th Cir.1978).

Defendant contends that in light of these requirements the doctrine of estoppel is inapplicable in this case. The court disagrees.

■ Defendant first contends that requirement number one is not met because there was never a representation to plaintiff (or her representatives) that the booklet contained all requirements. Defendant relies on language contained in the booklet which states that the booklet "describes the highlights of the [Uarco] Plan" and that "Medical Benefits are described fully in the Plan Document." This focus misses the point. By law defendant is required to include within the summary plan "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits...." 29 U.S.C. § 1022(b). Defendant's failure to do so is at best gross negligence and at worst intentional deception through concealment or inaction. The fact that defendant's summary plan included the quoted disclaimers does not relieve defendant of the statutory requirement of disclosure. To allow a plan to avoid statutory requirements of disclosure by including disclaimers of this sort would negate one of ERISA's major goals, protection of participants and beneficiaries. The court holds that disclaimers of this sort are invalid in light of ERISA's requirements of disclosure.

Defendant next contends that plaintiff was not justified in assuming that the booklet contained all the requirements for eligibility. In this regard defendant advances three reasons for holding plaintiff's reliance unjustifiable: (1) Plaintiff's representatives, Blanch and Dunn, both knew that the provisions of the 1979 summary plan were not exactly the same as the provisions of the Uarco Plan; (2) Blanch admitted that both he and Dunn had spoken of the need to get a copy of the major Plan Document; and (3) Blanch and Dunn were both aware of the disclaimers.

■ The court is not convinced by these arguments. That both Blanch and Dunn spoke of the need to get a copy of the Plan Document is hardly evidence that they were unjustified in relying on the summary plan itself. In regard to defendant's second point, the discrepancy that Blanch and Dunn were aware of was that the 1979 summary plan showed $7.50 in allowable benefits for out-patient psychiatric office visits, but the Uarco Plan actually paid $12.50 for these visits. Knowledge that the summary plan *underestimated* benefits is not enough to put Blanch and Dunn on notice that the summary plan did not include a limitation of the magnitude involved here. In regard to defendant's third argument the court has already dispensed with any argument concerning the validity of such disclaimers, pages 1474–1475, supra. Defendant also stresses the fact that both Blanch and Dunn are experienced insurance people, apparently contending that as such they should know not to rely on a summary plan. To the court it appears that the fact that they were experienced in insurance, particularly group insurance, means that they were probably aware of ERISA's disclosure requirements and that they were, therefore, justified in assuming that any exclusion such as this would be included in the summary plan because it was required by law.

■ Finally, defendant contends that in any event there was no damage to plaintiff. It is true that plaintiff stated that she entered Northside at the recommendation, and on the advice of, her physician. This statement, however, hardly compels a finding that plaintiff would have entered Northside "regardless of the Uarco Plan's coverage...." (Defendant's Reply Brief, p. 12). Whether plaintiff was damaged is a question of fact.[4]

---

3. See footnote 4, infra.

4. The court is not convinced, however, that it must consider the damage aspect of equitable estoppel. Given the policy considerations underlying ERISA it can be argued that the dam-

**1476**

Defendant's motion for summary judgment on this count is DENIED.

## II. *Count Two*

In Count Two of her complaint plaintiff alleges that defendant failed to provide: (1) adequate notice, in writing, of the reasons for denial of certain claims and (2) a full and fair review of the decisions denying these claims. Plaintiff seeks an injunction ordering the Uarco Plan to provide plaintiff with: (1) an adequate written statement of reasons denying her past and future claims and (2) a full and fair review of any decision denying her claims.[5] In addition plaintiff requests attorneys' fees and costs of the action.

Under the regulations promulgated to enforce ERISA, a participant or beneficiary is entitled to adequate notice of the reasons for the denial of a claim and a full and fair review of this upon request. 29 C.F.R. § 2560.503-1 (e)-(h) (1983).

■ Defendant contends that these issues are now moot because it has agreed to provide notice and review to plaintiff. The court cannot agree. Defendant has not proved, as required for summary judgment, that it has provided them, and as to future claims a court order is more binding than an "agreement." In addition, plaintiff seeks the attorneys' fees and costs for having to bring this action.

Defendant's motion for summary judgment on Count Two is DENIED. Of course, this decision in no way indicates that the court is convinced that plaintiff can, or will, prevail on this claim.

## III. *Count Three*

■ In this count plaintiff alleges that defendant has unreasonably refused to pay certain claims for prescription drug benefits merely because plaintiff did not have her original pharmacy receipts. Instead of submitting the original receipts, plaintiff provided defendant with copies of the pharmacy statements. Plaintiff was forced to use this method because the drugs were ordered in bulk by Northside.[6]

Defendant contends that this issue is also moot because they are now accepting as proper proof copies of the statements. Defendant specifically notes, however, that it is in no way conceding the necessity of doing so. (Defendant's Motion for Summary Judgment, p. 20, n. 6). Because plaintiff is seeking an injunction ordering defendant to change this policy the court does not see that Count Three is moot. And, as in Count Two, plaintiff is requesting attorneys' fees and costs under this count.

Defendant's motion for summary judgment as to Count Three is DENIED.

## IV. *Count Four*

■ In Count Four plaintiff alleges that defendant failed to provide her with requested information regarding the plan. According to plaintiff these actions by defendant violated § 502(c) of ERISA, 29 U.S.C. § 1132(c), which provides for a $100.00 a day penalty for the refusal to supply requested information.

Specifically, plaintiff alleges that on September 27, 1982, November 5, 1982, and November 17, 1982, Mr. Blanch, acting as plaintiff's representative, requested a copy of the "latest Uarco Plan certificate or description," (Amended Complaint, ¶ 18), and that the Uarco Plan, acting through its agents, refused, and continues to refuse, to furnish a "complete copy of the latest Uar-

---

age aspect is irrelevant. The court will consider this argument only after appropriate briefing.

**5.** In her response to defendant's motion for summary judgment plaintiff requests that defendant be ordered to provide *every* claimant with this information. The court only deals with plaintiff's individual requests because this is not a class action and there are serious doubts as to plaintiff's standing to object to the treatment of other claimants.

**6.** As defendant points out, the plan summary does require original receipts. (Uarco plan summary, p. 39). However, plaintiff's argument appears to be that this requirement is unreasonable (arbitrary and capricious) in light of the normal insurance industry practice of accepting month-end statements.

co Plan description to the [plaintiff]." (Amended Complaint, ¶ 19).

The evidence presented shows that Mr. Blanch made the following written requests [7]:

1) "I have a 1979 certificate and perhaps you are working from a later edition. If so, please let me have the certificate." (9/27/82 letter)

2) "Also, I still haven't received the new certificate booklet I requested." (11/5/82 letter)

3) "I still haven't received the certificate of insurance previously requested twice." (11/17/82 letter)

In his deposition Mr. Blanch states that on all three occasions he was referring to the plan summary, not the major plan document. (Blanch depo., pp. 35 and 41). Plaintiff contends that Mr. Blanch meant the "latest version of the Uarco Plan or the most recent up-to-date information concerning Plan Coverage." (Plaintiff's Reply Brief, p. 34). This hardly comports with what Mr. Blanch himself says he was referring to when he requested any later edition of the 1979 certificate.

If what plaintiff is contending is that the major Plan Document was requested and that defendant failed to provide it, defendant is entitled to summary judgment because the evidence establishes that Mr. Blanch requested (and meant to request) the latest summary plan. If, on the other hand, plaintiff is alleging that a copy of the plan summary was requested and that defendant failed to provide that, defendant is also entitled to summary judgment. The evidence is clear that Mr. Blanch informed defendant that he already had the 1979 summary plan booklet; this was the latest edition and Mr. Bell wrote Mr. Blanch saying so. Perhaps, given the requests, defendant should have provided plaintiff with another copy of the 1979 summary plan just for caution's sake. However, plaintiff was clearly not prejudiced by defendant's

failure to do so. *See Shlomchik v. Retirement Plan of Amalgamated Ins. Fund,* 502 F.Supp. 240 (E.D.Pa.1980), aff'd 671 F.2d 496 (3rd Cir.1981) (damages not allowed unless prejudice shown); *Accord Adams v. Western Conference of Teamsters Pension Plan,* 484 F.Supp. 933 (D.Utah 1979).

Defendant's motion for summary judgment as to Count Four is GRANTED.

## V. *Count Five*

 In this count plaintiff alleges that the complained of actions by defendant were committed with "malice, wilfull misconduct, fraud, intent to oppress, conscious indifference to the consequences of such actions ... [and that defendant is] guilty of aggravating conduct...." Plaintiff seeks actual and punitive damages for "emotional distress and wounded feelings."

It appears self-evident that this claim is based in tort. Plaintiff admits this— "Count Five ... is in the nature of a tort claim, based on the growing number of cases which have assessed punitive damages against insurers for "bad faith" in the handling, or mishandling, of claims." (Plaintiff's Reply Brief, p. 8).

Such tort action must be considered to be based on state law. Plaintiff has not cited, nor has the court found, any provision of ERISA which provides for such claims. Because ERISA specifically preempts state law claims, 29 U.S.C. § 1144, this state law claim cannot be maintained. *Whitaker v. Texaco, Inc.,* 566 F.Supp. 745 (N.D.Ga. 1983).

 It could be argued that this count, read broadly, also states a cause of action under ERISA. However, the relief prayed for is identical to that already requested under plaintiff's other counts (i.e., actual damages for the actions which form the basis for the remainder of the complaint), except that plaintiff also seeks punitive

---

7. 29 U.S.C. § 1024(b)(4) provides, in pertinent part:

The administrator shall, upon *written request* of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

damages. In this circuit punitive damages are not available under ERISA. *Whitaker,* at 750–52.

For these reasons defendant's motion for summary judgment as to Count Five is GRANTED.

## VI. *Count Six*

 Count Six alleges fraud on the part of the defendant and/or its agents. It appears to the court that plaintiff has conceded that summary judgment is appropriate as to this claim. "[I]t appears that the misrepresentations were not made with an "intent to deceive .... Such action ... probably does not amount to fraud." (Plaintiff's Reply Brief, p. 9). For this reason the court, without elaboration, GRANTS defendant's motion for summary judgment as to Count Six. If the court is incorrect in its interpretation of plaintiff's quoted statement, plaintiff may make a motion for reconsideration. In that case plaintiff should set forth any arguments relevant to Count Six, as her reply brief fails to do so.

## VII. *Jury Trial*

 Rather than make a separate motion to strike the jury demand defendant has included this request in its motion for summary judgment. As plaintiff points out, it was defendant who requested the jury trial. Nevertheless, the court holds that this case shall not be tried to a jury.[8] Plaintiff asserts that there is a split of authority concerning the right to a jury trial in an ERISA action. This is correct, however, in the Eleventh Circuit it is clear that jury trials are not allowed in such actions. *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980).[9]

In summary, the court:

1) DENIES defendant's motion for summary judgment as to Counts I, II and III;

2) GRANTS defendant's motion for summary judgment as to Counts IV, V and VI; and

3) Holds that the case shall not be tried to a jury.

---

**8.** Defendant has now withdrawn its request for a jury trial. Moreover, because the court finds that the right to a jury trial on an ERISA action does not exist in this circuit, the court cannot allow a jury trial.

Rule 39(a) of the Federal Rules of Civil Procedure states:

The trial of all issues so demanded shall be by jury unless ... (2) the court upon motion or its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

**9.** The *Calamia* decision binds this court. *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981).