891 F.2d 842
 11 Employee Benefits Cas. 2521
 Alexander CURRY, Plaintiff-Appellee,
v.
CONTRACT FABRICATORS INCORPORATED PROFIT SHARING PLAN;
Victor M. Haber, individually and in his formal
capacity as President of Contract
Fabricators, Inc.; et al.,
Defendants-Appellants.
Alexander CURRY, Plaintiff-Appellant, Cross-Appellee,
v.
CONTRACT FABRICATORS INCORPORATED PROFIT SHARING PLAN;
Victor M. Haber, individually and in his formal capacity as
President of Contract Fabricators, Inc., et al.,
Defendants-Appellees, Cross-Appellants.
 Nos. 88-7235, 88-7448.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 9, 1990.
 
 Theron Stokes, Kenneth L. Thomas, Massey, Means & Thomas, Montgomery, Ala., Joe R. Whatley, Jr., James E. Smith, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for Alexander Curry.
 Thomas R. DeBray, Kaufman, Rothfeder & Blitz, Montgomery, Ala., for Contract Fabricators Inc. Profit Sharing Plan, et al.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and ESCHBACH*, Senior Circuit Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 In this case, the defendant appeals the district court's award of civil penalties to the plaintiff under section 502(c) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c) (1982), and its award of attorneys' fees under section 1132(g), id. § 1132(g). Because district courts have discretion to award civil penalties under section 1132(c) and attorneys' fees under section 1132(g) and because the district court's decision was not an abuse of its discretion, we affirm.
 
 I.
 
 2
 Alexander Curry worked approximately thirteen years as an employee of Contract Fabricators, Inc. (CFI). During the last ten years of his employment, Curry belonged to CFI's employee benefit plan. Victor Haber, CFI's president, administered the plan. As amended in 1977, the plan gave the administrator discretion to deny payment of benefits until a claimant reached a minimum retirement age of sixty-five. The amended plan eliminated a provision that had required the administrator to deny payment of benefits for two years to any claimant who had accepted employment with a competitor of CFI's located within a 500-mile radius of Montgomery, Alabama.
 
 
 3
 In 1983 when Curry left CFI, his benefits under the plan had vested. Upon his departure, Curry inquired about payment of his benefits. Haber informed him that, because he might go to work for a competitor, he would have to wait two years before receiving payment. Curry, therefore, waited two years. In the fall of 1985, he again tried to collect his benefits. Haber, however, still refused payment. At that point, Curry got himself a lawyer.
 
 
 4
 In November 1985, Curry's lawyer spoke with Haber by phone regarding the denial of benefits. Haber stated that, because Curry had gone to work for a competitor, he would receive no benefits until he reached age sixty-five. Curry's attorney requested that Haber send him plan documents supporting the denial of benefits. Haber agreed to send the documents and also referred Curry's attorney to the plan's accountant. When Curry's attorney contacted the accountant, however, the accountant refused to answer any questions because he had received no prior authorization from Haber. Curry's attorney also duplicated his request for documents in an undated letter, which the district court found was sent a few days after the attorney's phone conversation with Haber. When Haber failed to provide either the requested benefits or plan documents, Curry filed suit in August 1986. Shortly thereafter, Haber provided the documents as well as a claims form. Curry filled out the form and, after receiving it, Haber paid Curry his benefits.
 
 
 5
 Based on these events, the district court found that Haber had "fraudulently" used CFI's profit sharing plan to prevent Curry from going to work for a competitor and then to punish him for having worked for a competitor. That conduct, in the district court's view, constituted a violation of Haber's duty to provide plan documents as required under 29 U.S.C. § 1024(b)(4) (1982).[1] The district court thus awarded Curry a civil penalty of $800 as authorized by 29 U.S.C. § 1132(c) (1982).[2] The district court also awarded Curry attorneys' fees under 29 U.S.C. § 1132(g) (1982).
 
 
 6
 On appeal, CFI challenges the civil penalty, claiming that Curry failed to exhaust his administrative remedies and suffered no harm or prejudice as a result of Haber's failure to provide plan documents. CFI also challenges the award of attorneys' fees as an abuse of discretion; Curry cross-appeals, claiming that the district court improperly selected a low hourly fee rate. We reject all of these challenges and affirm the district court's judgment.
 
 II.
 A.
 
 7
 ERISA requires every employee retirement plan to establish a claims procedure, which must provide for adequate written denials of claims as well as an opportunity for "full and fair review" of benefit denials. 29 U.S.C. § 1133 (1982); see 29 C.F.R. § 2560.503-1 (1988). CFI's plan did provide for such procedures, requiring a claimant to file a written request with the plan administrator on an official claims form, guaranteeing written notice of denial within sixty days, and outlining procedures for further review of denied claims.[3]
 
 
 8
 CFI argues that Curry failed to exhaust his administrative remedies under the plan before filing his ERISA claims in court.[4] According to CFI, Curry took no action in pursuit of his claim from November 1985, when Curry's attorney sent Haber the letter requesting plan documents, until August 1986, when Curry filed his lawsuit. CFI asserts that, even if Haber's failure to respond within sixty days to Curry's November letter constituted a denial of the claim under the plan's claims procedure, see supra note 3,[5] Curry still failed to request review under the procedures outlined in the plan, see id.[6] CFI argues that Curry failed to exhaust his administrative remedies and is therefore barred from bringing his ERISA claim to court.
 
 
 9
 CFI correctly asserts that a plaintiff must exhaust a plan's administrative remedies before bringing an ERISA suit. See Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir.1985), cert. denied, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). In so holding, this court in Mason rejected an argument that exhaustion should apply only to claims alleging violations of specific pension plans and not to claims brought under ERISA itself. See id. at 1227. Mason should not be read, however, as overruling well-established exceptions to the exhaustion requirement. In Amato v. Bernard, 618 F.2d 559 (9th Cir.1980), on which this court heavily relied in Mason, see 763 F.2d at 1226-27, the Ninth Circuit discussed the important policy concerns served by the exhaustion requirement: these include helping to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato, 618 F.2d at 567-68; see Mason, 763 F.2d at 1227 (citing Amato ); Kross v. Western Elec. Co., 701 F.2d 1238, 1244-45 (7th Cir.1983). The Amato court, however, also emphasized that exceptions to the exhaustion requirement exist:
 
 
 10
 We recognize of course that despite the usual applicability of the exhaustion requirement,
 
 
 11
 there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate.
 
 
 12
 Amato, 618 F.2d at 568 (quoting Winterberger v. General Teamsters Auto Truck Drivers & Helpers Local Union 162, 558 F.2d 923, 925 (9th Cir.1977)); see Glover v. St. Louis-S.F. Ry., 393 U.S. 324, 329-30, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969); Vaca v. Sipes, 386 U.S. 171, 184-85, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). See generally 4 K. Davis, Administrative Law Treatise § 26:1 (1983). In addition, the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion. Dale v. Chicago Tribune Co., 797 F.2d 458, 466 (7th Cir.1986), cert. denied, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987); Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund, 673 F.2d 931, 935 (7th Cir.1982), vacated on other grounds, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); Carter v. Signode Indus., 688 F.Supp. 1283, 1286 (N.D.Ill.1988); see Kross, 701 F.2d at 1244-45; Amato, 618 F.2d at 569.
 
 
 13
 We conclude that the district court did not abuse its discretion in not requiring Curry to exhaust his administrative remedies. In this case, CFI controlled the plan's administrative review procedures and exercised its control to deny Curry meaningful access to those procedures. Until Curry could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures. CFI nevertheless asks us to require that Curry exhaust those very procedures to which CFI itself denied him access. The district court allowed Curry to proceed without having exhausted his administrative remedies, and we cannot say that it abused its discretion in doing so. When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion. See Vaca, 386 U.S. at 185, 87 S.Ct. at 914; Amato, 618 F.2d at 568; Carter, 688 F.Supp. at 1286.[7] Indeed, under such circumstances as these, as the Amato court suggested, a district court would be "obliged to exercise its jurisdiction and [would be] guilty of an abuse of discretion if it [did] not." 618 F.2d at 568.
 
 B.
 
 14
 CFI next argues that even if Curry overcomes the exhaustion requirement, he still cannot bring suit because he suffered no prejudice as a result of CFI's denial of benefits. Because Haber had discretion not to pay Curry any benefits at all until Curry reached age sixty-five and because Curry eventually received his benefits anyway,[8] CFI would have us believe that Haber's failure to provide plan documents did not prejudice Curry. The district court, adopting the Eastern District of Pennsylvania's approach in Porcellini v. Strassheim Printing Co., 578 F.Supp. 605, 613-14 (E.D.Pa.1983), considered prejudice as a factor in, but not a prerequisite to, its decision to impose a civil penalty. CFI urges us to reverse this holding as a clear abuse of the district court's discretion. We decline the invitation.
 
 
 15
 CFI cites several district court cases and one former Fifth Circuit case, Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357 (5th Cir. Feb. 1981), cert. denied, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981),[9] for the proposition that prejudice is a prerequisite to an award of a civil penalty under section 1132(c). Although these cases advert to a lack of prejudice in support of their decisions not to award civil penalties, CFI overstates their holdings. As the former Fifth Circuit made clear in Paris when reviewing a district court's decision not to impose a civil penalty, "[t]he decision to grant relief under 29 U.S.C.A. § 1132(c) is committed to the discretion of the trial judge." 637 F.2d at 362. In exercising its discretion, therefore, the trial court may undoubtedly consider whether a denial of information prejudiced a plaintiff, but prejudice is not a prerequisite to an award of civil penalties. See Lesman v. Ransburg Corp., 719 F.Supp. 619 (W.D.Mich.1989); Bemis v. Hogue, 635 F.Supp. 1100, 1106 (E.D.Mich.1986); Porcellini, 578 F.Supp. at 613-14; Maryonovich v. Market Data Retrieval, Inc., 716 F.Supp. 343, 352 (N.D.Ill.1989) (dictum); see also Sandlin v. Iron Workers Dist. Council Pension Plan, 716 F.Supp. 571, 574 (N.D.Ala.1988), aff'd, 884 F.2d 585 (11th Cir.1989) ("There is nothing in § 1132(c) which establishes monetary loss as a prerequisite to the [civil penalty], which is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the pensioner for actual loss.").[10]
 
 
 16
 In fact, the cases cited by CFI are consistent with our statement of the law. In Paris, for example, the plaintiff brought several ERISA claims, including a section 1132(c) claim for civil penalties. The district court granted summary judgment in favor of the defendant without specifically addressing the section 1132(c) claim. 637 F.2d at 359. The appeal primarily involved a question of jurisdiction. The court briefly addressed the civil penalties issue, though, and found that the plaintiff had in effect failed to raise that issue either at trial or on appeal. The court thus read the district court's grant of summary judgment as a denial of the plaintiff's civil penalty claim and, not surprisingly, affirmed that judgment, citing the trial court's discretion to deny relief under section 1132(c). Id. at 362. As an afterthought, the court also noted that the plaintiff had not attempted to demonstrate prejudice, but the court immediately related that finding to the district court's exercise of discretion, as an indication that the district court had not abused its discretion in deciding not to impose a civil penalty. Id. A careful reading of Paris, therefore, suggests that prejudice was merely one factor (although an important one) that the trial court considered in exercising its discretion whether to award a civil penalty under section 1132(c), and on appeal, the Fifth Circuit deferred to that exercise of discretion.[11]
 
 
 17
 In the present case, we similarly conclude that the trial court did not commit an abuse of discretion in imposing a civil penalty under section 1132(c).[12] The trial court considered prejudice as a factor in its decision and properly exercised its discretion to award the damages.
 
 III.
 
 18
 Both parties challenge the district court's award of attorneys' fees to Curry. Applying Iron Worker's Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir.1980),[13] the district court held that Curry was entitled to attorneys' fees and costs. The court then calculated a reasonable fee under the twelve factors in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). Applying these factors, the court found that the hours worked by Curry's attorneys were reasonable but reduced the number of those hours by fifty percent in order to reflect Curry's monetary recovery. Because the attorneys lacked experience in ERISA cases, the court selected an hourly fee of sixty dollars, which it acknowledged was "on the low side." Based on these figures, the court arrived at an unadjusted lodestar figure of $9,441.00. Then, under Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the court enhanced this figure for contingency of success to arrive at a final award of $15,766.47.
 
 
 19
 On appeal, CFI challenges both the trial court's initial decision to award attorneys' fees under Bowen as well as its decision to enhance the award for contingency of success under Delaware Valley. Curry challenges the sixty dollar per hour fee figure. We reject both challenges and affirm the award of attorneys' fees.
 
 
 20
 ERISA section 1132(g) provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1) (1982). In Bowen, this court's predecessor articulated five factors to guide courts in determining the appropriateness of fee awards under section 1132(g).[14] As we have continually emphasized, these five factors are the " 'nuclei of concerns[,]' ... which should guide but not control the district court's decision." Nachwalter v. Christie, 805 F.2d 956, 961-62 (11th Cir.1986) (citations omitted); see Dixon v. Seafarers' Welfare Plan, 878 F.2d 1411, 1412 (11th Cir.1989). In reviewing a district court's determination regarding a fee award, this court will reverse only if the district court has clearly abused its discretion. Dixon, 878 F.2d at 1312; Fine v. Semet, 699 F.2d 1091, 1095 (11th Cir.1983). As we explained in Fine, "[t]his standard of review permits an area of decision in which a district court could go either way without reversal on review." 699 F.2d at 1095 (citing Johnson v. Mississippi, 606 F.2d 635, 637 (5th Cir.1979)).
 
 
 21
 Applying the Bowen factors in the present case, the district court found (1) that Haber acted in bad faith, misrepresenting that Curry had to wait two years after leaving CFI before receiving his benefits and then fraudulently denying Curry his benefits in retaliation for his having accepted employment with a competitor; (2) that Haber and CFI[15] could afford reasonable fees; (3) that the award of attorneys' fees was likely to prevent Haber from further abusing his position as plan administrator, thus (4) providing a common benefit for all plan participants and beneficiaries; and (5) that relative to Haber's bad faith conduct, Curry's claims were clearly meritorious. The district court carefully analyzed each of these factors; its findings were supported by the record; and it granted a discretionary award of attorneys' fees. We find no abuse of discretion in this decision and therefore reject CFI's challenge on this point.
 
 
 22
 We apply the same standard of review to the district court's decision to enhance the lodestar figure under Delaware Valley. See Lattimore v. Oman Constr., 868 F.2d 437, 440 (11th Cir.1989). The district court determined that a fee enhancement was necessary in this case based on its findings that (1) Curry's attorney worked on a contingency-fee basis, (2) Alabama lawyers who win contingency-fee cases expect to be highly compensated for taking the risk of nonpayment if they lose, and (3) without such enhancement ERISA cases would not attract competent counsel. Based on these findings, the district court did not abuse its discretion in deciding to enhance the award under Delaware Valley. We therefore reject CFI's challenge on this point as well.
 
 
 23
 Finally, we reject Curry's cross-appeal regarding the court's hourly rate figure. Again, the district court has discretion to select a reasonable hourly rate, and this court will not set aside that selection unless it constitutes a clear abuse of discretion. No such abuse has occurred here.
 
 
 24
 Based on our conclusion that the district court did not clearly abuse its discretion, we affirm the award of attorneys' fees in the amount of $15,766.47.
 
 IV.
 
 25
 Under 29 U.S.C. § 1132(c) (1982), the district court has discretion to award a civil penalty. Although an ERISA claimant must ordinarily exhaust available administrative remedies before bringing an ERISA claim to court, courts have discretion not to require exhaustion where it would be futile or where the plan administrator has denied the claimant meaningful access to the available review procedures. In this case, the court properly exercised its discretion and allowed Curry to prosecute his ERISA claim without having exhausted his administrative remedies.
 
 
 26
 In exercising its discretion under section 1132(c), the district court also may consider whether the plan administrator's failure to provide documents prejudiced the claimant; prejudice, however, is not a prerequisite to an award of a civil penalty under section 1132(c). In this case, the district court did not abuse its discretion in imposing a civil penalty even though it found no prejudice.
 
 
 27
 Similarly, the district court's award of attorneys' fees under 29 U.S.C. § 1132(g) (1982) is reversible on appeal only if it constitutes a clear abuse of discretion. In the present case, the district court committed no such abuse in awarding attorneys' fees in the amount of $15,766.47.
 
 
 28
 We therefore affirm both the district court's imposition of a civil penalty and its award of attorneys' fees.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Section 1024(b)(4) provides in pertinent part:
 The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.
 
 
 [2]
 Section 1132(c) provides in pertinent part:
 Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 Curry also claimed that Haber's conduct constituted a violation of his fiduciary duty under 29 U.S.C. § 1104(a)(1)(A), (B) (1982), which requires a fiduciary to
 discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries; and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.
 Violations of this duty give rise to a cause of action under ERISA's civil enforcement provision, id. § 1132(a)(3), for injunctive relief or "other appropriate equitable relief ... to redress such violations or ... to enforce any provisions of this subchapter or the terms of the plan."
 The district court, however, denied Curry relief on this claim, and neither party challenges that denial on appeal. We, therefore, do not address the claim.
 
 
 [3]
 The plan provided as follows:
 
 
 [6]
 01. Claims Procedure
 a. A plan participant or beneficiary shall make a claim for plan benefits by filing a written request with the plan administrator upon a form to be furnished to him for such purpose.
 b. If the claim is wholly or partially denied, the plan administrator shall furnish the participant or beneficiary with written notice of the denial within sixty (60) days of the date the original claim was filed. This notice of denial shall provide (1) the reason for denial; (2) specific reference to pertinent plan provision on which the denial is based; (3) a description of any additional information needed to perfect the claim and an explanation of why such information is necessary; and (4) an explanation of the plan's claim procedure.
 c. Participant or beneficiary shall have sixty (60) days from receipt of denial notice in which to make written application for review of the plan administrator. The participant or beneficiary may request that the review be in the nature of a hearing. Participant or beneficiary shall have the rights (1) to representation; (2) to review pertinent documents; and (3) to submit comments in writing.
 d. The review shall be made by a committee of [three] (3) individuals, one to be appointed by employer's board, one to be appointed by the participant and the third to be appointed by those named by the board and the participant. The review committee shall issue a decision on such review within sixty (60) days after receipt of an application for review as provided in Section 6.01(c).
 
 
 [4]
 The district court rejected CFI's preliminary argument that Curry failed to make a specific "written request" for documents as required under 29 U.S.C. § 1024(b)(4). The court held that the letter written by Curry's attorney satisfied section 1024(b)(4)'s "written request" requirement. Cf. 29 C.F.R. § 2560.503-1(d) (1988) ("If a reasonable procedure for filing claims has not been established by the plan, a claim shall be deemed filed when a written or oral communication is made by the claimant or the claimant's authorized representative which is reasonably calculated to bring the claim to the attention of ... the employer....")
 
 
 [5]
 See also 29 C.F.R. § 2560.503-1(e)(2), which provides, "[i]f notice of the denial of a claim is not furnished in accordance with paragraph (e)(1) of this section within a reasonable period of time, the claim shall be deemed denied." Subsection (e)(3) further provides that "a period of time will be deemed to be unreasonable if it exceeds 90 days after receipt of the claim by the plan."
 
 
 [6]
 See also 29 C.F.R. § 2560.503-1(g) (outlining review procedures required under section 1133)
 
 
 [7]
 Courts have reached similar results in analogous cases by applying principles of equitable estoppel. Cf. Carl Colteryhan Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund, 847 F.2d 113, 121 (3d Cir.1988) (allowing claim under Multiemployer Pension Plan Amendments Act without prior arbitration). As the Colteryhan court noted,
 [i]t is axiomatic that, as a general rule, a party should not be allowed to profit from its own wrongs[, and w]e believe that this rule is particularly apposite when dealing with federally regulated pension plans, because "Congress has emphasized 'the equitable character of [these] plans, 29 U.S.C. § 1001(c), [and therefore] we believe that equitable principles should be applied in this case.' "
 Id. (citation omitted).
 
 
 [8]
 That CFI eventually provided Curry with plan documents and then his benefits poses no bar to Curry's § 1132(c) claim. See Kleinhans v. Lisle Savings Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir.1987)
 
 
 [9]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [10]
 We note in passing that, even if prejudice were a prerequisite to a section 1132(c) claim, the record might well have supported a finding that Curry was prejudiced by CFI's failure to provide the requested documents. CFI's conduct forced Curry to hire an attorney. In addition, its conduct undoubtedly caused Curry aggravation and frustration, which courts have recognized as prejudice for purposes of § 1132(c) claims. See, e.g., Sandlin, 716 F.Supp. at 574 (trustees' withholding of information caused plaintiff "frustration and distress, if not ultimate monetary loss"); Porcellini, 578 F.Supp. at 615 (plaintiff's anxiety and aggravation as result of plan administrator's failure to provide information counted as prejudice)
 
 
 [11]
 A careful reading of three other cases cited by CFI--Lee v. Dayton Power & Light Co., 604 F.Supp. 987, 1002 (S.D.Ohio 1985); Chambers v. European American Bank & Trust Co., 601 F.Supp. 630, 638-39 (E.D.N.Y.1985); Shlomchik v. Retirement Plan of Amalgamated Ins. Fund, 502 F.Supp. 240, 245 (E.D.Pa.1980), aff'd, 671 F.2d 496 (3d Cir.1981)--also supports this characterization of the law. In Shlomchik, the court "in its discretion" decided not to award damages, pointing to the absence of prejudice as one factor supporting its decision. 502 F.Supp. at 245. Similarly in Lee, the court indicated that, in its view, the degree of prejudice was not sufficient to warrant "a discretionary award of damages under 29 U.S.C.A. § 1132(c)." 604 F.Supp. at 1002. The court in Chambers in effect followed the same approach but appended a stronger statement regarding the presence of prejudice before it would award a civil penalty
 Two other cases cited by CFI--Zittrouer v. Uarco Inc. Group Benefit Plan, 582 F.Supp. 1471, 1476-77 (N.D.Ga.1984); Wesley v. Monsanto Co., 554 F.Supp. 93, 97-98 (E.D.Mo.1982), aff'd, 710 F.2d 490 (8th Cir.1983)--are distinguishable on their facts. In Zittrouer, the district court denied the plaintiffs' 1132(c) claim for damages based on its finding that the plaintiffs already had a copy of the latest summary plan that they had requested. 582 F.Supp. at 1477. In Wesley, the court denied the plaintiff's 1132(c) claim because the plaintiff had never even requested a copy of the plan document at issue. 554 F.Supp. at 98. In both of these cases, the courts were well within the bounds of discretion in denying the plaintiffs' requests for 1132(c) penalties; both courts referred to the plaintiffs' lack of prejudice merely as a rationale in support of their discretionary decisions not to award damages.
 As these five cases demonstrate, in deciding whether to impose civil penalties under section 1132(c), courts may consider prejudice as a matter of discretion but need not consider it out of necessity.
 
 
 [12]
 In this case, moreover, the court awarded only $800 in penalty damages under section 1132(c). That section allows for damages of up to $100 a day, and here CFI failed to provide the requested information for a period of eight months (from thirty days after the date of Curry's mid-November request for information--section 1132(c)'s specified response time--until after the August filing of Curry's lawsuit), thus subjecting them to damages of up to approximately $24,000. In tailoring its discretionary award under section 1132(c) to one-thirtieth of this maximum amount, the district court undoubtedly took into account the equities of the case. Cf. Abbott v. Drs. Ridgik, Steinberg & Assocs., P.A., 609 F.Supp. 1216, 1220 (D.N.J.1985) ("A court can ... permissibly balance equities in assessing the need for an [sic] § 1132(c) award.")
 
 
 [13]
 Bowen presents a set of five factors to guide courts in determining whether to award attorneys' fees under 29 U.S.C. § 1132(g). See infra note 14 and accompanying text
 
 
 [14]
 These factors are:
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.
 Bowen, 624 F.2d at 1266 (footnotes omitted).
 
 
 [15]
 The district court held Haber and CFI liable for the attorneys' fees (as well as the civil penalty) and further ordered that payment for the award not come from the plan's funds