Paul R. GROHOWSKI, Plaintiff,

v.

U.E. SYSTEMS, INCORPORATED, U.E. Systems Inc. Money Purchase Plan, National Pension Services, Inc., Defendants.

Charles T. FORDE, Plaintiff,

v.

U.E. SYSTEMS, INCORPORATED, U.E. Systems, Inc. Money Purchase Plan, National Pension Services, Inc. Terence O'Hanlon and Michael Osterer, Defendants.

Nos. 93 CV 0131, 93 CV 6305 (BDP).

United States District Court, S.D. New York.

March 11, 1996.

Robert W. Folchetti, White Plains, NY, for Plaintiffs.

Edmund C. Graninger, Charles A. Goldberger, McCullough, Goldberger & Staudt, White Plains, NY, for Defendants U.E. Systems, National Pension, O'Hanlon and Osterer.

Eileen B. Eglin, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City.

Jeffrey Sunshine, Lake Success, NY.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiffs, Charles T. Forde and Paul R. Grohowski, bring this action against defendants U.E. Systems Incorporated, U.E. Systems Money Inc. Purchase Plan, National Pension Service, Inc. under the Employee Retirement Income Security Act of 1974 ("ERISA"). Grohowski also sues Terrence O'Hanlon and Michael Osterer. Plaintiffs seek to recover penalties and attorneys fees. Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTS

The plaintiffs, Paul Grohowski and Charles Forde, were employed by U.E. Systems from March 1, 1988 to March 3, 1992 and December, 1987 to January 22, 1993, respectively. During the course of their employment, plaintiffs, at different times, became eligible for participation in a money purchase plan established by U.E. Systems. The plan was funded entirely with contributions by U.E. Systems. Terrence O'Hanlon and Michael Osterer were Administrators and Trustees of the plan. No other fiduciaries were identified on the plan documents. After the plan was established, O'Hanlon and Osterer contracted National Pension Services ("NPS"), through its agent, Michael Meyers, to provide technical assistance in operating the plan. NPS's tasks included accounting, the preparation of annual reports and documents to be filed by the Administrators and Trustees with government agencies, the calculation of employee benefits, the calculation of contributions owed to the Plan by the sponsor, and the preparation of annual summaries of annual participants' interests in the plan, interests and amounts due at termination, and determination of employee eligibility.

On April 24, 1991, both Forde and Grohowski sent the following identical letters to Michael Meyers at NPS:

I would appreciate a statement of the U.E. Systems pension plan account. If this is not possible at the present time could you please furnish the following information:

A) the plan name

B) the plan sponsor's 9 digit employer identification number

C) the 3 digit plan number used to identify the plan

D) the name or form number of the report filed periodically (e.g. summary plan description, Form 5500 Form 5500C).

On May 1, 1991, Meyers forwarded these letters to O'Hanlon with the accompanying cover letter:

I have tried several times to get in touch with you and have not been successful. I realize that you are extremely busy and certainly do not feel that you are avoiding me ... I have been called weekly by [Grohowski] and I have recently received [a letter from Forde] requesting information concerning the pension program.

It seems to me they are indicating some concern as to monies in their account and I would like to address these questions. I would never be able to respond without permission from you ...

On May 13, 1991, O'Hanlon wrote back to Meyers and indicated his willingness to discuss the pension plan. On March 23, 1992, U.E. Systems advised NPS that it had terminated Grohowski's employment. On April 9, 1992, NPS provided the Plan Administrator with Grohowski's termination calculations and other information. On April 20, 1992, O'Hanlon sent this information to Grohowski.

On January 28, 1993, U.E. Systems advised NPS that Forde had left the company. Three days earlier, Forde sent a request for information to NPS and O'Hanlon. On February 12, 1993, NPS sent Forde information, and on February 16, 1993, O'Hanlon forwarded information. In 1993 plaintiffs filed this lawsuit based on U.E.'s and NPS's failure to respond to their 1991 letters. They do not seek any benefits under the plan.

## DISCUSSION

### A. Standard For Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, "a motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); see also *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). The nonmoving party must meet a burden of coming forward with "specific facts, showing that there is a genuine issue of fact for trial," Fed.R.Civ.P. 56(e) by a showing sufficient to establish the existence of every element essential to the party's case, and on, which the party will bear the burden of proof at trial.

In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d. Cir.1989). The Court is to "inquire whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby Inc,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), however, and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Knight v. United States Fire Ins.,* 804 F.2d 9, 11, 12–15 (2nd Cir.1986), *cert denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### B. Liability of NPS as a Fiduciary under ERISA

Plaintiffs argue that NPS is a fiduciary as defined in ERISA. The relevant statutory sections provide for fiduciary status only under the following circumstances:

a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of such plan ...

29 U.S.C § 1002(21)(A). ERISA also assigns fiduciary status to persons "named [as fiduciaries] in the plan instrument, or who, pursuant to a procedure specified in the plan, [are] identified as fiduciar[ies] ..." 29 U.S.C.

1102(a)(2); see also 29 U.S.C. § 1105(c)(1) permitting allocation of fiduciary responsibility pursuant to the plan instrument.

 In determining who is a fiduciary under ERISA, courts consider whether a party has exercised discretionary authority or control over a plan's management assets or administration. See *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1148–51 (3d Cir.1989) (independent public accountants lack authority over fund assets and affairs and thus are not fiduciaries). If a person's authority or control does not concern "management," or "plan assets," that person is not a fiduciary under section 3(21)(A)(i). See *Mack Boring & Parts v. Meeker Sharkey Moffitt Actuarial Consultants,* 930 F.2d 267, 270 (3d Cir.1991) (defendant who had discretionary control of funds would be "fiduciary only if those funds were plan assets"). Similarly, if a person's discretionary authority does not concern administration of a plan, that person is not a fiduciary. *Anoka Orthopaedic Assocs. P.A. v. Lechner,* 910 F.2d 514 (8th Cir.1990).

 Plaintiffs argue that NPS acted as fiduciary because Michael Meyers, NPS's representative, sold policies of whole life insurance to the participants, and that part of the plan's funds were invested in the policies. However, a recommendation to purchase life insurance does not constitute investment advice. See *Flacche v. Sun Life Assur. Co. of Canada,* 958 F.2d 730, 734–35 (6th Cir.1992); *Consolidated Beef Industries v. New York Life Insurance Co.,* 949 F.2d 960, 965 (8th Cir.1991) (one who markets insurance is merely a salesperson not a fiduciary); *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Society of the United States,* 841 F.2d 658, 664 (5th Cir.1988) ("simply urging the purchase of [insurance] does not make an insurance company an ERISA fiduciary"). Accordingly, we grant NPS's motion for summary judgment on these grounds.

## C. Statutory Penalties

 As noted above, plaintiffs in this case do not complain that they did not receive their benefits. Rather they seek redress for U.E.'s failure to provide them with the information they requested in 1991. Statutory penalties are provided for the failure or refusal to furnish information upon request to a participant or beneficiary. As noted above, Meyers did not respond to the April 24, 1991 letters. ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4) provides in relevant part, that the "administrator shall, upon written request of any participant, furnish a copy of ... the ... instrument under which the plan is established or operated." ERISA section 502(c), 29 U.S.C. § 1132(c) provides that any "administrator who fails or refuses to comply with a request for any information ... (unless such failure or refusal results from matters reasonably beyond the control of the administrator) to furnish to a participant ... may in the court's discretion be personally liable to such participant ... in the amount of up to 100 dollars a day from the date of such failure or refusal." As other courts have made clear, the ERISA statute commits the assessment of penalties to the trial court's sound discretion. See *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 847 (11th Cir.1990); *Paris v. Profit Sharing Plan,* 637 F.2d 357, 362 (5th Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1982); see also *Kascewicz v. Citibank,* 837 F.Supp. 1312, 1322 (S.D.N.Y.1993); *Chambers v. European American Bank & Trust Co.,* 601 F.Supp. 630, 638 (E.D.N.Y.1985).

 In determining whether plaintiffs are entitled to a statutory award, we may consider whether Meyers's failure to respond prejudiced them. *Kascewicz,* 837 F.Supp. at 1322, *citing, Sage v. Automation Inc. Pension Plan & Trust,* 845 F.2d 885, 894 n. 4 (10th Cir.1988). In this case, plaintiffs were not prejudiced. The plaintiffs were not entitled to any benefits in April of 1991 and there is no claim that any benefits were ultimately denied. However, prejudice in the form of a monetary loss is not a prerequisite to an award of civil penalties. See *Kascewicz,* 837 F.Supp. at 1320, 1322; *Curry v. Contract Fabricators,* 891 F.2d 842, 847 (11th Cir. 1990). We also consider whether defendants acted in bad faith. See *Glavor v. Shearson Lehman Hutton,* 879 F.Supp. 1028, 1035

(N.D.Cal.1994); *Pagovich v. Moskowitz,* 865 F.Supp. 130, 137 (S.D.N.Y.1994). Plaintiffs offer no evidence of bad faith. Each received his termination distribution shortly after submitting the necessary paperwork. In addition, U.E. sponsored meetings, which plaintiffs attended where benefits were explained and furnished them with yearly statements concerning their participation in the pension plan. Under the circumstances in this case, any award to plaintiffs, where the absence of either bad faith or prejudice is so palpable, would be an unjustifiable windfall. Accordingly, we find that an award is not appropriate. See *Hennessy v. F.D.I.C.,* 58 F.3d 908 (3d Cir.1995), *cert. dismissed,* —— U.S. ——, 116 S.Ct. 688, 133 L.Ed.2d 593 (1995).

### D. Attorney's Fees

 Plaintiffs also seek an award of attorney's fees for the present action. ERISA's authorization of recovery of attorney's fees is broad; section 1132(g) permits recovery of fees "in any action" under subchapter I (29 U.S.C. §§ 1001–1144) by a participant in a pension plan. Courts, including the Second Circuit, have established a five factor test as a guide in determining to award attorneys' fees in a given case. The governing factors are: (1) the offending party's bad faith or culpability; (2) the ability of the offending party to pay the fees and costs; (3) whether an award of fees would deter others from acting similarly under like circumstances; (4) the relative merits of the party's position; and (5) whether the action was filed to confer benefit on plan members generally. See *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); *New York State Teamsters Council Health and Hospital Fund v. The Estate of DePerno,* 816 F.Supp. 138, 152 (N.D.N.Y.1993); *Eddy v. Colonial Life Insurance Company of America,* 59 F.3d 201 (D.C.Cir.1995).

This case does not warrant the application of attorney's fees. Any fault on the part of defendants was de minimus; second, while it is likely that defendants could afford plaintiffs' fees, this factor is far from dispositive; third, there is no indication that requiring defendants to pay the fees will deter him and other ERISA fiduciaries and administrators from eschewing pension beneficiary requests; fourth, plaintiffs' case has marginal technical merit; finally, there is no evidence that this case is likely to benefit the other members of the plan. Accordingly, as the balance of these factors tilts sharply against an award of attorney's fees, plaintiffs' application for them is denied.

### CONCLUSION

For the reasons stated, the Court grants Defendants' motion for summary judgment. The above captioned cases are dismissed. The clerk shall enter judgment.

**SO ORDERED.**